UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.,

                  Plaintiff,                **REPORT AND**
                                        **<u>RECOMMENDATION</u>**

        - against -
                                     07 CV 3853 (NGG)

EXTASIS CORP., et al.,

                  Defendants.
-------------------------------------------------------------X

On September 14, 2007, plaintiff Garden City Boxing Club, Inc. ("Garden City") filed this action against defendants Extasis Corp., d/b/a Extasis Cocktail Lounge, and Norma R. Mancia (collectively, "defendants"), alleging that defendants engaged in the theft of a closed-circuit broadcast of the September 18, 2004 boxing match between Oscar De La Hoya and Bernard Hopkins, in violation of 47 U.S.C. §§ 553 and 605.

Upon the failure of defendants to answer or respond to the Complaint, plaintiff moved for default judgment on February 15, 2008. The Clerk of Court entered default against the defendants on February 19, 2008, and the action was subsequently referred to the undersigned to conduct an inquest and prepare a Report and Recommendation concerning the amount of damages to be awarded.

For the foregoing reasons, this Court respectfully recommends that, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), plaintiff be awarded $1,000.00 in statutory damages, $10,000.00 in enhanced damages, and $1,170.00 in litigation expenses.

FACTUAL BACKGROUND

In the Complaint, plaintiff alleges that it entered into a License Agreement that granted it exclusive rights to exhibit the September 18, 2004 telecast of the boxing match between Oscar De La Hoya and Bernard Hopkins, including all undercard and preliminary matches (the boxing match and all related bouts are collectively referred to as the "Event"), at closed-circuit locations such as theaters, arenas, bars, clubs, and restaurants throughout New York. (Compl.[1] ¶ 8). By entering into the contract, plaintiff hoped to extract commercial gain from the licensing of the broadcast to business establishments throughout the New York area. (Id. ¶ 9). Thus, plaintiff entered into sub-contracts with various establishments that allowed the establishments to broadcast the Event in exchange for a fee. (Id. ¶ 11). The transmission of the Event was electronically coded or "scrambled," and authorized establishments were provided with electronic decoding equipment to receive the signal. (Id. ¶¶ 12, 14).

Plaintiff alleges that Norma R. Mancia is the owner of Extasis Corp., d/b/a Extasis Cocktail Lounge, and that Extasis Cocktail Lounge is a commercial establishment located at 25-53 Steinway Street, Astoria, New York, 11103. (Id. ¶¶ 5, 6). On September 18, 2004, at approximately 10:28 p.m., plaintiff's auditor, Humphrey Montoya, entered the defendants' commercial establishment. (Montoya Aff.[2] at 1). Upon entry, Montoya observed approximately 10 people watching the Event on two televisions. (Id.) According to his Affidavit, the patrons

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed September 14, 2007.

[2] Citations to "Montoya Aff." refer to the auditor's Affidavit, dated September 24, 2004, appended as Exhibit A to Plaintiff's Memorandum of Law in support of [its] Request for Judgment by Default, filed February 26, 2008 ("Pl.'s Mem.").

were charged admission of $10.00 to view the Event. (Id. at 2). In light of the fact that the

defendants did not contract with the plaintiff for the right to exhibit the Event (Compl. ¶ 13),

plaintiff filed this action, seeking damages pursuant to 47 U.S.C. §§ 553 and 605.

Although the affidavits of service indicate that the Summons and Complaint were served

on the defendants on November 26, 2007, the defendants failed to answer or otherwise respond

to the Complaint. (Hooten Aff.[3] ¶ 3). Plaintiff then moved for default judgment against

defendants, and the Clerk of Court noted their default on February 19, 2008. The action was then

referred to the undersigned to conduct an inquest and prepare a Report and Recommendation on

the issue of damages. By Order dated February 27, 2008, the Court directed the parties to submit

papers in support of their damage calculations by March 27, 2008. The Court held an inquest

hearing on April 23, 2008, and in light of plaintiff's deficient submission in support of its

motion, plaintiff supplemented its papers on May 23, 2008.

Plaintiff has requested $10,000.00 in statutory damages pursuant to 47 U.S.C. §

605(e)(3)(C)(i)(II), $100,000.00 for defendants' willful violation pursuant to 47 U.S.C. §

605(e)(3)(C)(ii), $10,000.00 in statutory damages pursuant to 47 U.S.C. § 553(3)(A)(ii),

$50,000.00 in statutory damages pursuant to 47 U.S.C. § 553(3)(B), attorney's fees and costs,

and any other and further relief as the Court deemed just and proper. (Compl. at 9). Defendant

failed to respond to the Court's February 27, 2008 Order or to contact the Court in any manner.

---

[3]Citations to "Hooten Aff." refer to the Affirmation of Paul J. Hooten, Esq., in Support of
Default Judgment, dated February 15, 2008.

## DISCUSSION

A. <u>Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process in which first a default, and then a default judgment, is entered. <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case. <u>See</u> <u>id.</u>; Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default"). After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. <u>See</u> Fed. R. Civ. P. 55(b). If the amount of damages must be ascertained in order for default judgment to be entered, the court may conduct a hearing. <u>See</u> Fed. R. Civ. P. 55(b)(2); <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95. Here, plaintiff submitted a request for entry of default dated February 15, 2008. The Clerk of Court subsequently entered a default on February 19, 2008.

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously

4

[and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "afford[ ] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and any doubts should be resolved in favor of the defaulting party. Id. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice").

The court possesses significant discretion, and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). The greater the amount of money involved, the less justification there may be for entering the default judgment. See id. Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10A Fed. Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (gathering cases). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

Plaintiff alleges that the defendants violated 47 U.S.C. §§ 553[4] and 605 through the unauthorized interception of plaintiff's satellite communications. However, a court is not permitted to grant damages under both statutes for a single illegal transmission. See International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993). Rather, the Second Circuit has stated that where a defendant is found to have violated both statutes, the court should award damages pursuant to Section 605. Id.; see also Garden City Boxing Club, Inc. v. Polanco, No. 05 CV 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006), aff'd, 228 Fed. Appx. 29 (2d Cir. 2007). Since plaintiff may only receive statutory damages under one statutory provision, this Court has considered plaintiff's request for damages under Section 605.

Here, it is clear that the allegations in the Complaint establish the elements of liability necessary to state a claim under Section 605. Section 605(a), which provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person," 47

---

[4]Section 553(a)(1) provides, in pertinent part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

U.S.C. § 605(a), has been held to apply to the interception of cable communications originating as satellite or radio transmissions. See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 131 (2d Cir.), cert denied, 519 U.S. 929 (1996); see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *5; Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002). Here, defendants' alleged conduct – the unauthorized interception, receipt, and broadcast of the Event derived from satellite communications – violates this statute.

Furthermore, it is beyond dispute that defendants are in default. Both the corporate defendant, Extasis Corp., and the individual defendant, Norma R. Mancia, are in default because neither has responded to the Complaint.[5] See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"). Moreover, the corporate defendant has not obtained counsel, and failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel). Unlike those instances where there are potentially millions of dollars at stake and courts have been hesitant to enter default judgment, the amount of money involved in this case is not great. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default

---

[5]The liability of the individual defendant is discussed in detail infra at 13-14.

judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default).

Here, defendants have not only failed to answer or otherwise move with respect to the Complaint, but they have also failed to respond to plaintiff's motion for entry of a default judgment, and were non-responsive to the February 27, 2008 Order from this Court relating to the calculation of damages. Thus, plaintiff's evidence on damages is unrefuted. Given the opportunities afforded defendants, and their apparent lack of interest in participating in these proceedings, there is no compelling reason for further delay.


B. Damages

While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. The burden of proof on damages rests with the plaintiff. See id. An evidentiary hearing regarding damages is not necessary, so long as the court ensures that "there is a basis for the damages specified in a default judgment." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (gathering cases), aff'd, 873 F.2d 38 (2d Cir. 1989). In the present action, plaintiff has filed various affidavits and a memorandum of law in support of its request for damages and the defendants have failed to appear or respond to present evidence on the issue. Thus, the Court may make an informed recommendation on the issue of damages without holding an evidentiary hearing. See Garden City Boxing Club, Inc. v. Rojas, No. 05 CV 1047, 2006 WL 3388654, at *2 (E.D.N.Y. Nov. 21,

2006).

1)  Statutory Damages

Where, as here, a violation of Sections 605 has been established, plaintiff is entitled to elect statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(i). In this instance, plaintiff seeks statutory damages pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii). (Pl.'s Mem. at 6-7, 14). Section 605 states that "the party aggrieved may recover an award of statutory damages for each violation . . . involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605 (e)(3)(C)(i)(II). In the absence of a clear statutory definition of "violation," the Court exercises its discretion in determining which of the defendants' acts constitute a violation. See Garden City Boxing Club, Inc. v. Rodriguez, No. 05 CV 3692, 2006 WL 1064189, at *3 (E.D.N.Y. Mar. 20, 2006); Garden City Boxing Club, Inc, v. Rosado, No. 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005). The nature of the illegal conduct makes it difficult to ascertain the number of times that the defendants violated Section 605. Due to this difficulty, most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation. See, e.g., Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110-11 (E.D.N.Y. 1997). Accordingly, the Court finds that the defendants have committed one violation of Section 605.

Section 605 also allows the court discretion in determining the amount of damages that should be assessed for each violation. See 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111. The factors to be considered in determining the appropriate amount of damages include the "'pecuniary loss sustained by the

9

victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden a damage award would impose on the defendant relative to the burden alternative relief would impose.'" Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting Cablevision Sys. Dev. Co. v. Cohen, No. 84 CV 1155, slip. op. at *4-5 (E.D.N.Y. May 20, 1988)); see also Entertainment by J&J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

In calculating damages, some courts have awarded a flat damage amount for violations of Section 605. See, e.g., Top Rank, Inc. v. Ortiz, No. 01 CV 8427, 2003 WL 1960211, at *3 (S.D.N.Y. Mar. 27, 2003); Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003); Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding damages "based on the Court's view of the equities and not the estimate of the number of patrons."). Other courts have calculated damages based on the number of patrons in the commercial establishment during the broadcast. See, e.g., Garden City Boxing Club, Inc. v. Rosado, 2005 WL 3018704, at *4 (awarding $54.95 per patron); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4 (E.D.N.Y. Mar. 28, 2003) (awarding $50.00 per patron); Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs. Inc., 2002 WL 2022522, at *3 (awarding $50.00 per patron). Plaintiff seeks $10,000.00 in statutory damages, the maximum amount available under Section 605. (Pl.'s Mem. at 6).

Plaintiff asserts that an award of the maximum amount of statutory damages is

appropriate in this instance for a variety of reasons. Plaintiff indicates that it "lost revenue which would have been derived from the delivery and exhibition of the Event," and that it "should receive additional compensation to account for any profits gained by the Defendant for meals and/or drinks sold to the patrons" and for the loss of business opportunities, goodwill, and legitimate customers as a result of the defendants' conduct. (Id. at 11-12). Additionally, plaintiff claims that the unauthorized exhibition of the Event "threatens the viability of the closed-circuit industry." (Id. at 11). According to plaintiff, the "continued viability of Garden City Boxing Club as a business concern depends upon the willingness and ability of legitimate commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming, such as the Event." (Id. at 13).

Under the circumstances at hand, the Court finds that statutory damages should be assessed according to the number of patrons present during the unauthorized exhibition of the Event. Based on the information provided by the plaintiff, 10 patrons were present at the Extasis Cocktail Lounge during defendants' exhibition of the Event. (Montoya Aff. at 1).[6] Using the auditor's estimate of the number of patrons present, 10, awarding $50.00 per patron, and given the $1,000.00 minimum reward, the Court respectfully recommends that plaintiff be awarded $1,000.00 in statutory damages.

---

[6]Plaintiff suggests that as a starting point for calculating damages, the Court should consider the sublicense fees that plaintiff would have received had defendants entered into an agreement authorizing them to broadcast the Event. (Pl.'s Mem. at 8). Using an estimated capacity of 45 patrons, plaintiff asserts that defendants would have been charged a sublicense fee of $600.00. (Id.) In recommending the minimum $1,000.00, the Court has taken into account that sublicense fee and the 10 patrons who were actually present.

2) Enhanced Damages

Plaintiff also seeks enhanced damages pursuant to Section 605(e)(3)(C)(ii), which

provides for additional awards of up to $100,000.00 for all willful violations of Section 605(a).

47 U.S.C. § 605(e)(3)(C)(ii). The statute permits the Court to award enhanced damages where

the violation was "committed willfully and for purposes of direct or indirect commercial

advantage or private financial gain." Id.; see also Entertainment by J&J, Inc. v. Mama Zee Rest.

& Catering Servs., Inc., 2002 WL 2022522, at *4 (awarding $1,680.00 in statutory damages

under Section 605(e)(3)(C)(i)(II), plus an additional $10,000.00 in enhanced damages, in order to

redress the harm inflicted and deter future violations); Entertainment by J&J, Inc. v. Ramsarran,

2002 WL 720480, at *2 (awarding statutory damages of $5,000.00, increased by $10,000.00 for

willfulness, where defendant unlawfully displayed a boxing match to eighteen patrons in his bar).

Citing the willfulness of the defendants' actions, as well as a desire to deter further violations,

plaintiff requests $30,000.00 in enhanced damages, an amount equal to three times the amount of

statutory damages requested under § 605(e)(3)(C)(i)(II). (Pl.'s Mem. at 18).

Willfulness is defined as 'disregard for the governing statute and an indifference for its

requirements.'" J&J Sports Prods. v. Echeverria, No. 06 CV 2894, 2007 WL 1160423, at *3

(E.D.N.Y. Mar. 16, 2007) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127

(1985)). In the present action, defendants' conduct clearly shows disregard and indifference to

the requirements of Section 605. It is clear that defendants exhibited the Event without entering

into a licensing agreement with plaintiff.[7] Exhibiting the Event without authorization requires

---

[7]In fact, plaintiff states that its auditor, after witnessing defendants' exhibition of the Event,
"handed a cease and desist letter to the Defendant's agent which stated that the broadcast was

the purposeful use of illegal decoding devices, manipulation of the closed-circuit system used to broadcast the Event, the removal of a converter box from a residential property, or other similar means. (Compl. ¶ 31). It is also reasonable to assume that food and drinks were sold to patrons watching the Event, making it likely that defendants enjoyed increased commercial gain as a result of the exhibition. These factors are routinely taken into consideration by courts awarding enhanced damages. See, e.g., Kingvision Pay-Per-View, Ltd. v. Castillo Rest. Corp., No. 06 CV 617, 2007 WL 841804, at *5 (E.D.N.Y. Jan. 16, 2007); Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 CV 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003).

Since the evidence indicates that the defendants acted willfully in illegally intercepting the Event under circumstances warranting the imposition of enhanced damages, and taking into consideration the commercial gain that was likely experienced through increased food and drink sales, the Court respectfully recommends that plaintiff be awarded $10,000.00 in enhanced damages.[8]

## C. Liability of Individual Defendant

Plaintiff's Complaint names both Extasis Corp., d/b/a Extasis Cocktail Lounge, and

---

illegal." (Pl.'s Mem. at 15).

[8]The Court notes that plaintiff's requests for damages are inconsistent. In its Complaint, plaintiff sought $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $100,000.00 pursuant to section 605(e)(3)(C)(ii), $10,000.00 pursuant to section 553(3)(A)(ii), and $50,000.00 pursuant to section 553(3)(B). (Compl. at 9). However, in plaintiff's proposed Amended Default Judgment, plaintiff sought to be awarded the sum of $20,000.00. (Proposed Amended Default Judgment, filed February 29, 2008). Plaintiff did not indicate the method by which it claimed entitlement to an award of $20,000.00. (Id.)

Norma R. Mancia, as the owner of Extasis Corp., d/b/a Extasis Cocktail Lounge, as defendants in

the action. (Compl. ¶¶ 6, 7). To establish a contributory violation of 47 U.S.C. § 605(a),

plaintiff is required to demonstrate that Ms. Mancia authorized the violations set forth in the

Complaint. See Garden City Boxing Club, Inc. v. Morales, No. 05 CV 64, 2005 WL 2476264, at

*10 (E.D.N.Y. Oct. 7, 2005) (internal citations omitted); see also Softel, Inc. v. Dragon Med. &

Scientific Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). "'To establish vicarious liability, .

. . [plaintiff] must alternately show that . . . [Mancia] had a "right and ability to supervise" the

infringing activities and had an obvious and direct financial interest in the exploitation of [the]

copyrighted materials.'" Garden City Boxing Club, Inc. v. Morales, 2005 WL 2476264, at *10

(internal citation omitted).

Based on the undisputed allegation that Ms. Mancia owned Extasis Corp., d/b/a Extasis

Cocktail Lounge, the Court finds that she had both a right and the ability to supervise the

infringing activities and a direct financial interest in the exhibition of the Event. Accordingly,

the Court respectfully recommends that defendant Norma R. Mancia be held jointly and severally

liable for damages awarded in this action.[9]

---

[9]One court in this district recently found that similar allegations were insufficient to hold an individual defendant vicariously liable because the plaintiff had not demonstrated sufficient supervisory control by the "sole officer, directory, shareholder and/or principal," or the requisite financial interest in the violation. J&J Sport Productions, Inc. v. Daley, No. 06 CV 238 (E.D.N.Y. Feb. 15, 2007). However, due to the difficulty that plaintiffs face in producing evidence in default cases such as this, where the defendants refuse to cooperate in the discovery process, and in keeping with the majority of courts in this district, the Court recommends that the individual defendant be held vicariously liable. See, e.g., J&J Sports Prods., Inc. v. Benson, No. 06 CV 1119, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007) (finding individual defendant vicariously liable); Garden City Boxing Club Inc. v. Morales, 2005 WL 2476264, at *10 (same).

D. Attorney's Fees and Costs

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to full costs and reasonable

attorney's fees. See 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff's counsel requests that the Court

award $1,170.00 in litigation expenses, an amount that includes $700.00 in attorney's fees,

$120.00 in process server fee for service, and $350.00 in filing fees. (Fees Aff.[10] ¶ 3). Requests

for attorney's fees must be "accompanied by contemporaneous time records indicating, for each

attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n

for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983). Counsel's Affidavit

indicates that 2.75 hours of work were performed by an attorney with a billing rate of $200.00

per hour, and 2.5 hours of work were performed by a paralegal with a billing a rate of $75.00 per

hour. (Hooten Aff. ¶ 4). Based on the information provided, the Court finds the attorney's fees

to be reasonable, and respectfully recommends that plaintiff be awarded $700.00 in fees.

Plaintiff also seeks reimbursement for filing fees. (Id. ¶ 3). The taxable costs for which a

party may seek reimbursement include service of process fees and filing fees. See 47 U.S.C. §

605(e)(3)(B)(iii); 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d). Since counsel's requests for $350.00

in filing fees and for $120.00 in service of process fees are reasonable, the Court further

respectfully recommends that plaintiff be awarded $470.00 in filing fees.

E. Pre-Judgment Interest

In its proposed Amended Default Judgment, plaintiff requests that this Court award pre-

---

[10]Citations to "Fees Aff." refer to the Affidavit of Costs and Fees of Paul J. Hooten, Esq.,
dated March 4, 2008.

judgment interest on its requested amount of statutory damages at a rate of 9% pursuant to N.Y. C.P.L.R. § 5004. (Proposed Amended Default Judgment, filed February 29, 2008). Plaintiff does not cite any case law in support of its request, and courts are divided as to the question of the award of pre-judgment interest in similar cases. Some courts have granted interest, citing the award as "common practice among courts within the Second Circuit" pursuant to N.Y. C.P.L.R. § 5004. See, e.g., Garden City Boxing Club, Inc. v. Morales, 2005 WL 2476264, at *10; Kingvision Pay-Per-View, Ltd. v. Recio, 2003 WL 21383826, at *5. Other courts have awarded interest without discussion. See Kingvision Pay-Per-View, Ltd. v. Ruiz, No. 04 CV 6566, 2005 WL 589403, at *3 (S.D.N.Y. Mar. 9, 2005). However, other courts have reasoned that pre-judgment interest should not be awarded in such cases. The court in Kingvision Pay-Per-View Ltd. v. Olivares, 02 CV 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004), discussed at length why interest should not be awarded. That court reasoned that pre-judgment interest was not recoverable because New York law does not award such interest on punitive damages, and statutory damages under section 605 are "analogous to punitive damages in that they are designed to deter others from similar infringing activity." 2004 WL 744226, at *5. See also Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 65 (E.D.N.Y. Apr. 13, 2006); CSC Holdings, Inc. v. Khrisat, No. 04 CV 8592, 2005 WL 3030838, at *6 (S.D.N.Y. Nov. 8, 2005); Garden City Boxing Club, Inc. v. Rosado, 2005 WL 3018704, at *5; Kingvision Pay-Per-View Ltd. v. Batista, 05 CV 0614, 2005 WL 2999472, at *5 (E.D.N.Y. Oct. 6, 2005). This Court agrees with the reasoning in the latter line of cases and respectfully recommends that no pre-judgment interest be awarded.

## CONCLUSION

In summary, the Court respectfully recommends that default judgment be entered in favor of the plaintiff and that plaintiff be awarded $1,000.00 in statutory damages, $10,000.00 in enhanced damages, and $1,170.00 in attorney's fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
    July 9 , 2008

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

17